## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION


HAROLD JOHN ADAMS, JR., #1243761     §

VS.                         §          CIVIL ACTION NO. 6:07cv541

DIRECTOR, TDCJ-CID          §

### MEMORANDUM OPINION AND
### ORDER OF DISMISSAL

Petitioner Harold John Adams, Jr., an inmate confined in the Texas prison system, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636(c).

### Procedural Background

Adams was convicted on May 21, 2004, of first-degree felony manufacture of a controlled substance, methamphetamine, in an amount of 200 grams or more but less than 400 grams, in count one, and possession of a controlled substance, namely methamphetamine, in an amount of 200 grams or more but less than 400 grams, in count two.  The jury made an affirmative deadly weapon finding, sentenced Adams to thirty years confinement, and assessed a fine of $10,000. *See* Tex. Health & Safety Code §§ 481.112(a), (e); Tex. Penal Code § 12.32(a), (b). Jurisdiction is based on Adams's county of conviction, Henderson County, in the Eastern District of Texas, Tyler Division. *See* 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000) (jurisdiction is proper in either the county of conviction or the county of confinement). The appeals court reformed the judgment to reflect Adams's not guilty plea to

count two, acquittal of count two, and the jury's deadly weapon finding. Adams now challenges this conviction.

Adams maintained the same counsel for appeal and his conviction was affirmed by the Twelfth Court of Appeals on August 16, 2006. *Adams v. State*, 2006 WL 2365681 (Tex. App.-Tyler, Aug. 16, 2006), *pet. ref'd*. Adams filed a petition for discretionary review which was refused on December 20, 2006. *Adams v. State*, PDR No. 1522-06 (Tex. Crim. App. 2006).

Adams filed a state application for writ of habeas corpus on May 7, 2007. *Ex parte Adams*, at 2. This application was denied without written order on September 12, 2007. *Id.* at cover. Adams filed the instant petition on November 8, 2007. *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (for purposes of determining the applicability of AEDPA, a federal petition is filed on the date it is placed in the prison mail system).

### Petitioner's Claims

Petitioner raises the following claims:

1. Ineffective assistance of trial counsel for:
   a. Failure to go to the crime scene with Adams to investigate;
   b. Failure to object to the trial court's not instructing the jury that Renee Myer was an accomplice as a matter of law;
   c. Failure to strike a biased juror;
   d. Having a conflict of interest;
   e. Failure to cross examine Investigator Johnson with Court's Exhibit 1, the affidavit regarding the confidential informant;

2. Ineffective assistance of counsel on appeal for failing to raise the following issues:
   a. The trial court did not instruct the jury that Renee Myer was the accomplice as a matter of law;
   b. A juror conferred with a witness during trial;
   c. Adams was denied the right to confront the confidential informant;
   d. a *Brady* violation;

3.      The evidence was insufficient to support the jury's
        deadly weapon finding;

4.      The trial court, prosecutor, and police failed to
        follow Texas Rule of Criminal Procedure 2.03(b);

5.      The state's attorney violated a motion in limine; and

6.      Petitioner is innocent of the crime.

**<u>Factual Background</u>**

The Opinion of the Twelfth Court of Appeals includes the following facts:

At trial, Gun Barrel City Police Department Investigator Patrick Johnson testified as the State's first witness. Johnson testified that on March 21, 2003, he was contacted by a reliable confidential informant who told him that Donald Penix was manufacturing methamphetamine in a small tent behind a residence owned by Renee Myer in Henderson County, Texas. The informant made reference to another individual with regard to Penix's activities at the Myer residence, but could not identify or describe that other person. Johnson and Henderson County Sheriff's Department Investigator Joseph Miller gathered a group of officers and proceeded to the Myer residence.

Johnson testified that upon their arrival at the Myer residence, he had an unobstructed view of the portion of the backyard where the tent was located. Johnson stated that as he and other officers approached, he observed two white males run from the tent in the backyard into a wooded area behind the house. Johnson testified that the two men were within five to ten feet of the tent and already running when he first saw them. Investigator Kevin Hanes later testified that the men were within arm's length of the tent when he first observed them. Johnson identified the two men as Appellant and Penix. Johnson further stated that Appellant was wearing blue jeans, but was not wearing a shirt.

According to Johnson, Officer Kevin Hanes shouted at Appellant to stop, but Appellant continued to flee, scaled a barbed wire fence in the backyard, and ran across a pasture into the wooded area behind the residence. Hanes and Johnson ultimately apprehended Appellant approximately one quarter mile from the Myer residence. Penix was detained in the nearby pasture by Officers Jeremy Scruggs and Anthony Holmes.

Investigator Miller testified as the State's next witness. Miller testified that he looked inside the tent and observed (1) a plastic bowl with a doughy mixture in it,

(2) a blue pitcher with a metal strainer and a cloth on top of it that contained a liquid substance, (3) a loaded .357 magnum handgun lying on a chair, and (4) a black bag containing clothing. Miller also stated that a shirt found close to a nearby tree was likely to be Appellant's size since Penix was a much larger individual, weighing approximately three hundred pounds. Miller stated that the items of clothing inside the bag found in the tent appeared that they could be Appellant's size and were too small to fit Penix. Miller further stated that he saw no other person in the backyard other than Appellant and Penix. Miller testified that he detected the familiar odor of anhydrous ammonia emanating from the tent, which, among other factors, caused him to later contact the Department of Public Safety ("DPS") Lab in Tyler, Texas to investigate the scene.

Miller further testified that he obtained oral consent from Myer to search her residence. Miller stated that once inside the residence, he discovered marijuana, numerous pseudoephedrine boxes in the clothes dryer, two pill grinders, scales, plastic baggies, firearms, syringes, and numerous other drug related items. Miller further stated that Hanes located a syringe containing a brownish liquid on Appellant at the time of his arrest that was identical to the syringes Miller discovered in the residence. Miller testified that thereafter, Appellant, Penix, and Myer were all arrested for manufacture of a controlled substance.

Dennis Pridgen and Reuben Rendon of the DPS crime lab in Tyler, Texas responded to Miller's request for assistance. At trial, Pridgen, testified that he was the drug section supervisor for the DPS crime lab in Tyler. Pridgen stated that at the scene, as he approached the tent, he detected the strong odor of ammonia that is associated with anhydrous ammonia, a common ingredient in the manufacture of methamphetamine. Pridgen described the tent as a methamphetamine lab and further stated that from the items located in the tent, it appeared as though "they were in the process of producing and extracting methamphetamine" in the tent. Pridgen collected evidence from the blue pitcher, the plastic bowl, and the straining cloth found inside the tent. He further testified that many of the items located in the tent were consistent with items commonly found at clandestine methamphetamine lab sites.

Pridgen further testified that he examined evidence in the Myer residence. Pridgen testified that items located in the residence such as crushed ephedrine or pseudoephedrine tablets, precut strips of tinfoil, drain opener, coffee grinders with powder residue on them, and mineral spirits were commonly used in the methamphetamine manufacturing process. Other such items were located in the backyard of the Myer residence including Coleman fuel, a garden sprayer, starting fluid cans, and a propane tank. Pridgen testified that garden sprayers are used as hydrogen gas generators in the final stage of the methamphetamine manufacturing process. He stated that the contents of the sprayer were tested and

4

deemed acidic, indicating that the sprayer was used in the methamphetamine manufacturing process. Pridgen later tested the substances found in the plastic bowl and the metal strainer located atop the blue pitcher. Pridgen testified that these substances contained methamphetamine.   Pridgen testified that the substance in the metal strainer weighed 21.75 grams while the substance in the bowl weighed 333.18 grams.

Myer was the State's final witness. Myer testified that she lived at the residence behind which the tent containing the methamphetamine lab was located. Myer stated that Appellant had been living in the tent for approximately four days before the date in question. Myer further stated that it was common for Penix to spend time at her residence and that he had spent the night there the night before he was arrested. Myer testified that she was a methamphetamine user. Myer further testified that three days before the officers discovered the tent, Penix asked her if he could smoke the bones to try to get a second pull out of them. According to Myer this meant to try to get more methamphetamine out of the substance left over from the manufacture of a previous batch by putting the substance through a second manufacturing process. Myer further testified that Appellant was with Penix when he asked her this question and that she told Penix that it would be alright if he would get rid of it immediately after he finished. Myer stated that in the days leading up to the arrest, she observed Appellant walking around with a handgun similar to the one discovered by officers in the tent. Myer described Appellant's actions as "patrolling" or "guarding."

After Myer's testimony, the State rested. Appellant moved for a directed verdict, which the trial court denied. Thereafter, Appellant rested. Following the argument of counsel, the jury found Appellant guilty of the count of manufacturing of a controlled substance and made a finding that Appellant used or exhibited a deadly weapon. After a trial on punishment, the jury assessed Appellant's punishment at imprisonment for thirty years and a ten thousand dollar fine. The trial court sentenced Appellant accordingly.

*Adams v. State*, 2006 WL 2365681 at 1-3.

## **Standards and Discussion**

Title 28 U.S.C. § 2254(d) dictates a highly deferential standard for evaluating state-court rulings.  *Bell v. Cone*, 535 U.S. 685 (2005).  State courts are presumed to know and follow the law.  *Id*.  State court factual findings are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear, convincing evidence.  *Murphy v. Dretke*, 416 F.3d

427, 432 (5th Cir. 2005), *pet. for cert*. filed Oct. 7, 2005; 28 U.S.C. § 2254(e)(1).

The Texas Court of Criminal Appeals already has denied Adams's claims; consequently, Petitioner cannot obtain federal habeas corpus relief unless he can show that the state court's adjudication of those claims either resulted in a decision that was contrary to established federal law (*see Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002), *cert. denied* 537 U.S. 953; 28 U.S.C. § 2254(d)(1)) or resulted in a decision based on an unreasonable determination of the facts (*see Riddle*, 288 F.3d at 716; 28 U.S.C. § 2254(d)(2)).  The unreasonable application clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable.  *Brown v. Payton*, 125 S. Ct. 1432, 1442 (2005).  The habeas petitioner has the burden of showing that the state court applied the law to the facts of his case in an objectively unreasonable manner.  *Woodford v. Visciotti*, 537 U.S. 19, 25 and 27 (2003); *see also*, *Price v. Vincent*, 538 U.S. 634, 641 (2003).

Factual determinations underlying the Texas Court of Criminal Appeals's adjudication are entitled to a presumption of correctness which must be rebutted by a presentation of clear and convincing evidence. 28 U.S.C. § 2254(e). A petitioner seeking habeas relief pursuant to 28 U.S.C. § 2254 must plead facts in support of his claims.  Rule 2(c).  Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, in state and federal court, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.  *Joseph v. Butler*, 838 F.2d 786, 788 (5th Cir. 1988); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (cited in *Murphy*, 416 F.3d at 437).

### Failure to Go to the Crime Scene with Adams to Investigate

While the trial court granted a motion to allow Adams to go with trial counsel to the crime scene, the fact that trial counsel later decided that it was not necessary is not ineffective

6

assistance of counsel. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). However, in assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments. *Id*. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Adams claims that had trial counsel gone to the scene of the crime with him, counsel would have seen for himself that: 1) the small tent that the investigators were talking about was actually a big tent and, therefore, it would have been impossible for the police to see him by the tent as they drove up; 2) it would have been very difficult to smell ammonia over the smell of body waste at the site; and 3) some of the ingredients necessary to make methamphetamine were not in the tent but, rather, in a burn pile outside the tent.  First, it was not necessary for trial counsel to go to the scene of the crime to appreciate the size of the tent or argue the ability of the officers to see Adams. There were four pictures specifically of the tent introduced as evidence during the trial (23 *Statement of Facts* State's Exhibits 3, 4, 7, and 8) and there was significant testimony, on direct and cross examination, regarding the ability of the police to see Adams near the tent before they made chase after him (17 *Statement of Facts* 42-46, 108-09, 134-38, 198-200, 207-08, 220-21, and 225-26). Counsel also argued this issue in his closing statement. 20 *Statement of Facts* 29 and 34. Therefore, trial counsel's decision that viewing the tent in person was not necessary was reasonable and Adams was not prejudiced.

Furthermore, all of the things that Adams states his trial counsel could have observed are specific to the day that the crime occurred. There is no guarantee, and little likelihood, that the

positions of the tent and the methamphetamine ingredients and the intensity of the smell of body waste would have been the same on the day that Adams and trial counsel would have gone back to the site. No beneficial, additional information would have been gained by returning to the scene, thus, trial counsel reasonably decided not to go there with Adams.

Finally, Adams fails to prove that the outcome of his trial would have been different had trial counsel gone to the scene of the crime. Indeed, the outcome would not have been different, as there was no beneficial evidence to be gained from going to the scene. As a result, Adams has failed to demonstrate that counsel's actions were deficient or that he was prejudiced. The state court's denial of this claim was reasonable.

**Failure to Object to the Lack of Jury Instruction on Accomplice Renee Myer**

Adams contends that trial counsel was ineffective for failing to object to the trial court's failure to instruct the jury that Myer was an accomplice as a matter of law. The jury charge in Adams's case included an accomplice instruction; however, Adams claims that it should also have included an accomplice as a matter of law instruction.

Texas law provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code. Crim. Proc. art. 38.14. An accomplice witness is a person who participates with the defendant before, during, or after the commission of a crime. *McFarland v. State*, 928 S.W.2d 482, 514 (Tex. Crim. App. 1996), *cert. denied* 519 U.S. 1119 (1997).  If a witness has been indicted for the crime, he or she is an accomplice as a matter of law. *Badillo v. State*, 963 S.W.2d 854, 857 (Tex. App.–San Antonio, Feb. 18, 1998). If a witness is an accomplice as a matter of law, it is the court's duty to so instruct the jury. *DeBlanc v. State*, 799

8

S.W.2d 701, 708 (Tex. Crim. App. 1990), *cert. denied* 501 U.S. 1259 (1991).

Myer, having been indicted for the same two offenses as Adams, testified as an accomplice witness during Adams's trial. 19 *Statement of Facts* 5-80. However, Adams has failed to present any evidence to overcome the presumption that his counsel's failure to object to lack of an accomplice as a matter of law instruction was not part of sound trial strategy. *See Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997), *cert. denied* 522 U.S. 1120 (1998). It was clear from the trial that Myers was the accomplice referred to in the accomplice instruction, both because she admitted to being charged with the same offenses and because she was the only witness that was not law enforcement. 19 *Statement of Facts* 27-31. Adams has also failed to demonstrate, or even allege, that he was prejudiced by his trial counsel's performance because even if the jury had further been instructed that Myers was an accomplice by law, this would have been redundant information as it was already clear from the trial that she was.

Adams claims that counsel's failure to object resulted in Adams's being denied the right to raise this issue in his state habeas application. This allegation is without merit because he did raise his accomplice as a matter of law claim in his state habeas application, and the issue was decided on the merits. *Ex parte Adams* at 27.

Adams also cites a letter from his counsel to District Attorney Scott in support of this claim. Adams says that counsel's letter referenced mistakes he made in reference to appendices and page numbering. He does not attach this letter, and Adams's statements about what is contained in the letter are conclusory. Adams has not shown that trial counsel had anything to gain by objecting. As additional evidence of lack of prejudice, the appeals court determined that Myers's accomplice testimony was sufficiently corroborated. *Adams v. State*, 2006 WL 2365681.

9

As a result, Adams has failed to demonstrate that counsel's actions were deficient or that he was prejudiced. The state court's denial of this claim was reasonable.

### Failure to Strike a Biased Juror

Adams contends that trial counsel was ineffective for failing to strike a biased juror.  The Sixth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, guarantees that an accused shall enjoy the right to a trial by an impartial jury. *Parker v. Gladden*, 385 U.S. 363, 364 (1966).  Further, a federal court must initially presume that a jury was impartial. *United States v. Ruggiero*, 56 F.3d 647, 652 (5th Cir. 1995), *cert. denied* 516 U.S. 951.  Where a jury panel is tainted by an outside influence, a presumption of prejudice arises when the outside influence is brought to the attention of the trial court, and it is incumbent upon the government to rebut that presumption by proving the harmlessness of the breach. *Drew v. Collins*, 964 F.2d 411, 415 (5th Cir. 1992), *cert. denied* 509 U.S. 925 (1993). Factual findings made by a state court regarding jury misconduct are entitled to a presumption of correctness under the federal habeas corpus statute. *Rushen v. Spain*, 464 U.S. 114, 120 (1983).

Adams provides only his own conclusory assertion that juror Morris indicated that he would be biased.  Mere conclusory statements do not raise a constitutional issue in a habeas case. *Ross*, 694 F. 2d at 1011.  Moreover, his assertion is directly contradicted by the record. When questioned by trial counsel as to whether being away from work for the trial would cause him to be biased, Morris stated that it would put him under stress. 15 *Statement of Facts* 96-97. He did not, as Adams claims, "twice frankly and without any reservation [admit] that he could not be [an] impartial juror." *Petition* at 7.

Furthermore, Adams has failed to overcome the presumption that trial counsel's decision not to strike the juror was the result of anything other than reasoned trial strategy.  *See Rector*,

120 F.3d at 564.  Juror Morris indicated that he had experience in negotiating business matters. 15 *Statement of Facts* 96.  Trial counsel was aware that Adams's case was complex, in that it would take several days and would involve significant testimony about the science of manufacturing methamphetamine, and having a juror experienced in dealing with complex issues could be beneficial to the defense.

Adams has failed to provide any of the necessary evidence to rebut the finding either that his trial counsel was not deficient, or that Adams was not prejudiced by his trial counsel's performance.  The state court's denial of this claim was reasonable.

### Conflict of Interest

Adams contends that trial counsel was ineffective for having a conflict of interest. Claims of conflict of interest on the part of defense counsel fall into two categories: (1) multiple representation cases; and (2) cases involving other types of conflicts that might impinge on an attorney's loyalty to his client. *Beets v. Scott*, 65 F.3d 1258, 1265-66 (5th Cir. 1995), *cert. denied* 517 U.S. 1157 (1996).  With respect to the latter type of conflict of interest claim, where a conflict exists between the lawyer's self-interests and the petitioner's interests, the only relevant standard of harm is the effect of the decision on the defendant's case, which effect is measured by *Strickland's* prejudice standard.  *Id.* at 1271.  Because Adams's claim alleges a conflict of his own interests with those of trial counsel, Adams must demonstrate both deficient performance and resulting prejudice under *Strickland*.  *See Strickland*, 466 U.S. at 692-94.

Adams points to a statement made by counsel in his motion for new trial.  At the hearing on motion for new trial, counsel declined to proceed on this issue, indicating that he did not believe his assistance was truly ineffective. 2 *Clerk's Record* 245.  In the motion, counsel raised many grounds upon which he argues a new trial should be granted, the final being that he was

11

confused and distracted during the trial because of his mother's illness. 2 *Clerk's Record* 228-38. Counsel further stated that because he was distracted and confused, he did not object to the court's reduction of his fees.  2 *Clerk's Record* 236-37.

This statement alone is not sufficient to prove a conflict of interest claim. First, Adams did not request the fee reduction; counsel was appointed by the court. Adams has failed to demonstrate that counsel had a conflict of interest.  Second, there is no indication from the court that the fees were reduced because the court believed counsel was ineffective; the court would have been well aware that the cure for ineffective assistance of counsel is not a fee reduction. Finally, Adams has failed to point to some instance of deficient performance arising from counsel's distraction and confusion and has failed to show resulting prejudice.  The state court's denial of this claim was reasonable.

**Failure to Cross Examine Investigator Johnson with the Confidential Informant's Affidavit**

Adams contends that trial counsel was ineffective for failing to cross examine Investigator Johnson regarding the confidential informant affidavit.  Apparently the affidavit was initially suggested pre-trial, by the court, as a way to determine if the confidential informant's testimony was necessary to a fair determination of guilt/innocence pursuant to Texas Rule of Evidence 508(c).  If the confidential informant's testimony were necessary, the prosecution would have had to reveal his identity, or the charges against Adams would have been dropped. *See* Tex. Rule Evid. 508(c). However, on May 14, 2004, in a pre-trial hearing, the court acknowledged that the language of the affidavit might not be clear enough to determine whether the confidential informant's testimony was necessary (14 *Statement of Facts* 37-41), and on May 18, 2004, the court held a sealed in-chambers discussion with the confidential informant (*Adams v. State*, 2006 WL 2365681).  Before trial began, trial counsel complained that the defense had

still not received the affidavit. 17 *Statements of Facts* 11-12. The court indicated that the affidavit's importance had likely been overcome by the sealed in-chambers hearing and determined to withhold a ruling on the necessity of the confidential informant's testimony. 17 *Statement of Facts* 11-12 and 20. Trial proceeded and Investigator Johnson, the affiant on the confidential informant affidavit, testified. 17 *Statement of Facts* 33-94. At the close of court on the same day, May 18, 2004, the defense received the completed affidavit. 18 *Statement of Facts* 9-10. First, the affidavit is inherently contradictory, so it was not necessarily useful to the defense. The affidavit presents two questions to the confidential informant. 23 *Statement of Facts* Court's Exhibit 1. The second is to be answered only if the first is answered affirmatively. *Id*. The affidavit reads as follows:

> The confidential informant (CI) I received information from on or about March 21, 2003 concerning a drug lab Donald Penix was involved in has informed me that:

>> The said CI DOES/DOES NOT recognize the photo I showed him of Harold Adams;

>> OR

>> If said CI does recognize Harold Adams, then he further states Harold Adams WAS/WAS NOT involved in the drug lab with Donald Penix on March 21, 2003.

*Id*. Again, the affidavit instructed that the second question was to be answered only if the confidential informant indicated in question one that he recognized Adams. However, the confidential informant indicated that he did not recognize Adams and then he went on to suggest that Adams was not involved in the drug lab with Penix.  *Id*. This appears to be a result of a misunderstanding of the affidavit's questions. The testimony of Investigator Johnson at trial was

that the confidential informant called Investigator Johnson and told him that Penix was cooking methamphetamine in the backyard tent. 17 *Statement of Facts* 38-39. The confidential informant further told Johnson that another individual was out there but that he "couldn't describe him or didn't know who he was." *Id*. at 39.   The judge also ruled during trial that the confidential informant had no exculpatory evidence. 18 *Statement of Facts* 12. These facts seem to indicate that Investigator Johnson meant to affirm in the affidavit that the confidential informant told him that he did not recognize Adams and could not affirmatively place him at the scene with Penix, whenever that confidential informant perceived Penix at the crime scene.

Nevertheless, because this affidavit was contradictory, it could be reasoned trial strategy for trial counsel not to make an issue of it on cross examination with Investigator Johnson. *See Rector*, 120 F.3d at 564.   Trial counsel may have believed that confronting Investigator Johnson with the affidavit might solicit testimony that there was a mistake on the affidavit or that it simply indicated that the confidential informant could not affirmatively place Adams at the scene.

As a result, Adams has not shown that trial counsel was deficient.  Neither was Adams prejudiced by trial counsel's failure to cross examine Investigator Johnson about the affidavit. The confidential informant merely provided the probable cause for the police to go to the scene of the crime.  He did not provide any evidence upon which Adams's conviction was based. Evidence found at the scene, not any statement made by the confidential informant, led to Adams's conviction.

Adams has failed to demonstrate that counsel's actions were deficient or that he was prejudiced. The state court's denial of this claim was reasonable.  Furthermore, the fact that Adams did not seek to obtain new counsel for appeal undermines his arguments that counsel was

ineffective at trial.

It is not clear whether Adams is alleging that counsel should have objected at trial to denial of the ability to cross examine Investigator Johnson with the confidential informant's affidavit. To the extent that Adams is claiming that trial counsel failed to object at trial, this claim is without merit. When the defense received the affidavit, Johnson was still available to be re-called. 18 *Statement of Facts* 9-11.

### Appellate Counsel's Failure to Raise the Jury Instruction Issue

Adams had the same counsel for trial and appeal.  Adams claims that counsel was ineffective on appeal for failing to raise the issue that the trial court did not instruct the jury that Renee Myer was an accomplice as a matter of law.  To demonstrate deficiency he must show that counsel unreasonably failed to discover and raise nonfrivolous issues.  *Smith v. Robbins*, 528 U.S. 259, 286 (2000).  Appellate counsel need not, and should not, raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal.  *Id*. at 288.  Thus, it is possible that an ineffectiveness claim may be based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *Id*.  To do this, a petitioner must show that a particular nonfrivolous issue was clearly stronger than issues that counsel did present.  *Id*.

Adams raised his ineffective assistance of appellate counsel claims in his state writ petition, which was denied. *Ex parte Adams*, at 11-12.  As discussed previously, Adams has not shown that trial counsel was ineffective for failing to raise the issue that the trial court did not instruct the jury that Myer was an accomplice at law.  It was so obvious to the jury that Myer was the accomplice to whom the rule applied that, had counsel objected at trial, thereby lowering the necessary harm standard to "some error" (*see Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.

15

Crim. App. 1994)), this was still not an issue clearly stronger than the issues counsel did raise. Counsel was not ineffective for failing to raise the issue that the trial court did not instruct the jury that Myer was an accomplice as a matter of law. Adams has failed to demonstrate that this issue is clearly stronger than the issues that counsel did raise.

Indeed, it is a weak argument and would not have led to success on appeal.  Adams was entitled to an accomplice as a matter of law instruction to the jury. *See DeBlanc*, 799 S.W.2d at 708. However, counsel did not object to the failure to include such an instruction. Consequently, the appeals court could only have reversed Adams's conviction if the failure to include the instruction caused egregious harm, that is, deprived him of a fair and impartial trial. *See Abdnor*, 871 S.W.2d at 732.   Adams has not proved, and the record does not support, that he was deprived of a fair and impartial trial. It was clear at trial that Myer was the accomplice to whom the rule applied and, therefore, there was no egregious harm.

This claim is without merit and would not have led to success on appeal. As a result, Adams has failed to demonstrate that counsel's actions were deficient or that he was prejudiced. The trial court's denial of this claim was reasonable.

### Appellate Counsel's Failure to Raise the Issue that a Juror Conferred with a Witness

Adams claims that counsel was ineffective on appeal for failing to raise the issue that a juror talked to a witness during trial.  A federal court must initially presume that a jury was impartial. *United States v. Ruggiero*, 56 F.3d at 652.  Where a jury panel is tainted by an outside influence, a presumption of prejudice arises when the outside influence is brought to the attention of the trial court.  *Drew*, 964 F.2d at 415.  When there is no outside influence, however, but instead the petitioner alleges that the jurors have violated an instruction of the court, no presumption arises.  *Drew*, 964 F.2d at 415-16. Rather, the petitioner must demonstrate that jury

16

misconduct prejudiced his constitutional right to a fair trial.  *Id*.  Factual findings made by a state court regarding jury misconduct are entitled to a presumption of correctness under the federal habeas corpus statute.  *Rushen*, 464 U.S. at 120.

Review of the record reveals that Juror Morris asked State's witness Jody Miller if he was going to be around after everything over, "everything" being trial on both guilt/innocence and punishment. 21 *Statement of Facts* 5. He did not ask him any other question. *Id*. at 5-7.  That was the end of the conversation. *Id*. at 6-7. The record does not show that they discussed the case, as Adams claims.

No outside influence was brought to bear on the jury; therefore, no presumption of prejudice arises.  *Drew*, 964 F.2d at 415-16. Adams has not demonstrated, and the record does not reflect, that Morris's misconduct prejudiced Adams's constitutional right to a fair trial.  The trial court had a hearing on this issue and denied the defense motion for mistrial, thereby implicitly determining that the misconduct did not prejudice the jury. 21 *Statement of Facts* 5-8. This finding is entitled to a presumption of correctness which has not been rebutted by Adams. Adams has not shown that Morris's misconduct had any bearing on Adams's trial. This claim is not clearly more compelling than the other issues raised by counsel.  Adams has failed to demonstrate that counsel's actions were deficient or that he was prejudiced. The state court's denial of this claim was reasonable.

**Appellate Counsel's Failure to Raise the Issue of the Right to Confront the Informant**

Adams appears to claim that counsel should have raised on appeal the denial of the right to confront the confidential informant.  This claim is without merit. At trial, counsel argued that the confidential informant affidavit was proof that the confidential informant had exculpatory evidence and that as a result his identity should be revealed so that he could testify. 18 *Statement*

17

*of Facts* 9-12.   The trial court rejected this argument because the judge had done a sealed in-chambers interview with the confidential informant and determined that he did not have any exculpatory evidence.  *Id*.   The court was very clear, after both meeting with the confidential informant and viewing the affidavit, that the confidential informant did not have any exculpatory evidence and the disclosure was not appropriate pursuant to Texas Rule of Evidence 508.  *Id*.

Additionally, Adams was not convicted on evidence from the confidential informant. Rather, the confidential informant simply provided the probable cause for the police to go to the scene of the crime. *See Washington v. State*, 902 S.W.2d 649, 657 (Tex. App.–Houston 14th Dist.,1995, *pet. ref'd*) (when the informant is not present when a search warrant is executed and the informant does not participate in the offense for which the defendant is charged, the identity of the informant does not need to be disclosed because the informant's testimony is not essential to a fair determination of guilt).   This claim is not clearly stronger than the issues that counsel raised on appeal.   Adams has failed to demonstrate that counsel's actions were deficient or that Adams was prejudiced.   The state court's denial of this claim was reasonable.

### Appellate Counsel's Failure to Raise the *Brady* Violation Issue

Adams claims that counsel was ineffective on appeal for failing to raise the issue of a *Brady* violation.   To prevail on a *Brady* claim, a defendant must show that the evidence at issue was favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence was suppressed by the State, either willfully or inadvertently; and prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Titsworth v. Dretke*, 401 F.3d 301, 306 (5th Cir. 2005), *cert. denied* 546 U.S. 1097. The evidence is material if the record demonstrates a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  *Strickler*, 527 U.S. at 280; *Titsworth*, 401 F.3d at 306. A

18

reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Titsworth*, 401 F.3d at 306. Moreover, a petitioner must show that the information was not available to him through due diligence. *United States v. Aubin*, 87 F.3d 141, 149 (5th Cir. 1996), *cert. denied* 519 U.S. 1119 (1997).

Adams has not shown that there was a *Brady* violation in his case. Adams incorrectly claims that the affidavit from Investigator Johnson regarding the confidential informant caused a *Brady* violation. Adams has not demonstrated that the prosecution suppressed or withheld the affidavit; rather, the record reflects that it was received during trial, at a time when the defense had the opportunity to use the affidavit for whatever purposes it chose. 18 *Statement of Facts* 9-12. Nor was the affidavit favorable. The affidavit was inherently contradictory, and as a result, not favorable to the defense. A materiality analysis is not appropriate because the affidavit *was* disclosed to the defense. This claim is without merit. Adams has failed to demonstrate that counsel's actions were deficient or that Adams was prejudiced. The state court's denial of this claim was reasonable.

### Insufficient Evidence to Support the Jury's Deadly Weapon Finding

Adams claims that the jury erred in making a deadly weapon finding in his case because the evidence was legally insufficient to support the finding. Adams raised this issue in his state writ application. *Ex parte Adams*, at 13. The Texas Court of Criminal Appeals denied relief. *Id*. at cover. Therefore, this Court cannot grant habeas corpus relief unless it determines that the state court's determination to deny relief was in conflict with clearly established federal law as determined by the Supreme Court or based on an unreasonable determination of the facts.

In determining whether evidence is sufficient to support a state court conviction, a federal court determines whether, viewing the evidence in the light most favorable to the

19

prosecution (*Wright v. West*, 505 U.S. 277, 284 (1992); *Miller v. Johnson*, 200 F.3d 274, 286

(5th Cir. 2000), *cert. denied* 531 U.S. 849),  any rational fact finder could have found the crime's

essential elements beyond a reasonable doubt (*Wright*, 505 U.S. at 284; *United States v. Webster*,

421 F.3d 308, 311 (5th Cir. 2005)).  The evidence need merely satisfy the "substantive elements

of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 n. 16.  A

state court judgment applying this rule in a particular case is entitled to deference on federal

habeas review (*Wright*, 505 U.S. at 290), but the habeas court itself should apply the rule

(*Wright*, 505 U.S. at 290; *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied* 510

U.S. 1141).   In determining whether any rational fact finder, viewing the evidence in the light

most favorable to the prosecution, could have found the state crime's essential elements beyond

a reasonable doubt, a federal court resolves all credibility choices and conflicting inferences in

favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005), *cert. denied* 126 S.

Ct. 51.  A reviewing court faced with a record of historical facts that supports conflicting

inferences must presume--even if it does not affirmatively appear in the record--that the trier of

fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

*Wright*, 505 U.S. at 296-97 (*concurring opinion*); *United States v. Harris*, 104 F.3d 1465, 1470

(5th Cir. 1997), *cert. denied* 522 U.S. 833.  On federal habeas corpus review a federal court

"may find the evidence sufficient to support a conviction even though the facts also support one

or more reasonable hypotheses consistent with the defendant's claim of innocence."  *Gibson v.

Collins*, 947 F.2d 780, 783 (5th Cir. 1991).  The question on federal habeas corpus review, when

a sufficiency of the evidence challenge is made to a presumptively valid state court conviction, is

not whether the state courts complied with all nuances of state law or whether the state courts

failed to enforce a purely state rule. *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991).

Because the Twelfth Court of Appeals issued the last reasoned opinion on the matter, the intermediate appellate decision should be reviewed to determine whether the denial of this claim was contrary to, or an unreasonable application of, federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Before affirming his conviction, the Twelfth Court of Appeals of Texas discussed Adams's legal insufficiency of evidence claim as follows:

> Here, the State was required to prove that [Adams] (1) used or exhibited a deadly weapon, to-wit: a firearm, during the commission of the offense or (2) was a party to the offense and knew that a deadly weapon would be used or exhibited. See Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon Supp. 2005); Tex. Code Crim. Proc. Ann. art. 42.12 § 3g(a)(2) (Vernon Supp. 2005). A person is criminally responsible as a party to an offense if the offense is committed by the conduct of another for which he is "criminally responsible." See Tex. Pen. Code Ann. § 7.01(a) (Vernon 2003). A person is "criminally responsible" for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. See Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). [Adams] argues that there is neither evidence that he was found in possession of a firearm upon his arrest, nor that he used a firearm in the commission of the offense with which he was charged.
>
> The court of criminal appeals' decision in *Gale v. State*, 998 S.W.2d 221 (Tex. Crim. App. 1999) is instructive. In *Gale*, the appellant permitted police to search his residence. *Id.* at 223. Upon a search of the appellant's bedroom closet, officers discovered a trash bag containing twenty pounds of marijuana, a Ruger Mini 14 rifle, an Uzi semi automatic assault rifle, a nine millimeter rifle, a nine millimeter handgun, and ammunition for the firearms including a loaded clip for the Mini 14 rifle. *Id.* Relying on *Patterson v. State*, [] the court held that the record supported a deadly weapon finding because a juror could rationally find that the weapons discovered facilitated the appellant's criminal offense of possession of marijuana. See *Gale*, 98 S.W.2d at 225.
>
> In the case at hand, the record reflects that [Adams] and Penix were seen running from the tent as the officers approached. Miller testified that he saw a loaded .357 magnum handgun lying on a chair in close proximity to the items in the tent found to contain methamphetamine and other items that Pridgen testified were consistent with items commonly found at clandestine methamphetamine lab sites. Moreover, Myer [] stated that [Adams] had been living in the tent for approximately four days before the date in question. Myer further testified that she was a methamphetamine user and that three days before the officers discovered the tent, Penix had asked her if he could try to get more

> methamphetamine out of the substance left over from the manufacture of a
> previous batch by putting the substance through a second manufacturing process.
> Myer further testified that [Adams] was with Penix when he asked her this
> question and that she told Penix that it would be alright if he would get rid of it
> immediately after he finished. Finally, Myer stated that in the days leading up to
> the arrest, she observed [Adams] walking around with a handgun similar to the
> one discovered by officers in the tent and described [Adams]'s actions as
> "patrolling" or "guarding."

*Adams v. State*, 2006 WL 2365681. The appellate court concluded that the jury could have reasonably determined beyond a reasonable doubt that the weapon discovered facilitated Adams's criminal offense of manufacturing methamphetamine and that the jury could have reasonably determined beyond a reasonable doubt that Adams acted with intent to promote the manufacture of methamphetamine and aided or attempted to aid Penix to commit the offense with knowledge that the firearm would be exhibited.  *Id*.  The appellate court held that the evidence was legally sufficient to support the jury's deadly weapon finding.  *Id*.

Because the state appellate court applied *Jackson* when it reviewed Adams's sufficiency of the evidence claim, that court's review of the claim was not in conflict with clearly established federal law. Moreover, Adams has failed to provide any evidence to overcome the factual determinations made by the state courts. *See* 28 U.S.C. § 2254(e)(1).  Adams's claim that the evidence is legally insufficient to sustain the deadly weapon finding amounts to nothing more than a disagreement with the fact-finder's resolution of conflicts in the evidence. Therefore, the claim is foreclosed by settled principles of appellate review. *See Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1989) ("we should not substitute our view of the evidence for that of the fact-finder"); *Cobb v. Wainwright*, 666 F.2d 966, 971 (5th Cir. 1982), *cert. denied* 457 U.S. 1107 ("the jury has the sole responsibility to judge the weight and credibility of the evidence").  Viewing the evidence in the light most favorable to the prosecution (*see Wright*, 505

22

U.S. at 284; *Miller*, 200 F.3d at 286), this Court determines that a rational fact finder could have found beyond a reasonable doubt (*see Wright*, 505 U.S. at 284; *United States v. Webster*, 421 F.3d at 311) that a deadly weapon was used.

### Violation of Texas Rule of Criminal Procedure 2.03(b)

Federal habeas corpus is available for vindication only of rights existing under federal law (*Martinez v. Johnson*, 255 F.3d 229, 246 (5th Cir. 2001), *cert. denied* 534 U.S. 1163), not of rights existing solely under state procedural rules (*Manning v. Warden, Louisiana State Penitentiary*, 786 F.2d 710, 711 (5th Cir. 1986)). A violation of a state procedural rule does not, in itself, constitute a ground for federal habeas relief. Adams's contention that Texas Code of Criminal Procedure 2.03(b) was violated does not state a claim for federal habeas relief.

Furthermore, this claim is without merit. Article 2.03(b) states:

It is the duty of the trial court, the attorney representing the accused, the attorney representing the state and all peace officers to so conduct themselves as to insure a fair trial for both the state and the defendant, not to impair the presumption of innocence, and at the same time afford the public the benefits of a free press.

Tex. Code Crim. Proc. art. 2.03(b). Adams points to the Assistant District Attorney's coming to the scene of the crime and a lack of fingerprinting evidence to support his claim that this Article was violated. These claims, without more, do not support a finding that Article 2.03(b) was violated. Adams implies that all of his other claims further support an Article 2.03(b) violation, however, Adams has not established that any of those claims have merit. The state court's denial of this claim was reasonable.

### The State's Attorney Violated a Motion in Limine

Adams contends that the state's attorney violated a motion in limine, but Adams never explains to what motion in limine he is referring or how it was violated.

**Actual innocence**

Adams contends that he is innocent of the crime of which he was convicted.   Actual innocence is not a cognizable claim under the federal habeas statute.   *See Herrera v. Collins*, 506 U.S. 390, 404 (1993).   In support of his claim, Adams offers no additional evidence that was not presented in the state courts.   Adams's actual innocence claim does not establish entitlement to habeas corpus relief.

Adams has not shown that the state court's adjudication of his claims either resulted in a decision that was contrary to established federal law (*see Riddle*, 288 F.3d at 716; 28 U.S.C. § 2254(d)(1)) or resulted in a decision based on an unreasonable determination of the facts (*see Riddle*, 288 F.3d at 716; 28 U.S.C. § 2254(d)(2)).

**Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability.   28 U.S.C. § 2253(c)(1)(A).   Although Petitioner has not yet filed a notice of appeal, this Court may *sua sponte* rule on a certificate of appealability because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court, and further briefing and argument on the very issues the court has just ruled on would be repetitious.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right.   *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); 28 U.S.C. § 2253(c)(2).   The petitioner must demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.  *United States v. Webster*, 392 F.3d at 791; 28 U.S.C. § 2253(c)(2).  In determining whether to grant a certificate of appealability, a court is limited to a threshold inquiry into the underlying merit of the petitioner's claims; this threshold inquiry does not require full consideration of the factual and legal bases adduced in support of the claims, but instead is based on an overview of the claims in the habeas petition and a general assessment of their merits.  *United States v. Webster*, 392 F.3d at 791.

In cases where a district court rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir.  2003), *cert. denied* 540 U.S. 956; *see also Houser v. Dretke*, 395 F.3d 560, 561 (5th Cir. 2004).

The petitioner's arguments ultimately must be assessed under the deferential standard required by 28 U.S.C. § 2254(d)(1): Relief may not be granted unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  *Tennard v. Dretke*, 542 U.S. 274 (2004); *Bagwell v. Dretke*, 372 F.3d 748, 753 (5th Cir. 2004), *cert. denied* 125 S. Ct. 498.  A state court's decision is contrary to clearly established Federal law, as determined by the Supreme Court of the United States if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.  *Bagwell*, 372 F.3d at 753 n. 4.  The Supreme Court has held that a certificate of appealability is a "jurisdictional prerequisite" and a court of appeals lacks jurisdiction to rule on the merits until a certificate of

appealability has been issued.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  In this case, reasonable jurists could neither debate nor find that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  *Id.* at 327.  It is therefore

ORDERED that the above-styled petition for writ of habeas corpus is **DENIED** and the case is **DISMISSED** with prejudice.  It is further

ORDERED that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **9**   day of  **June, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE